FILED
APR 10 2024
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| VENKATESH SATTARU, NIKHIL PENMATSA, SRAVAN PENUMETCHA, and NITYA SATTARU, | ) | 4:24-cr-00169-JAR/JSD |
| Defendants. | ) | |

**INDICTMENT**

**COUNT 1**
**(Forced Labor)**

The Grand Jury Charges:

From in about December 2022 continuing through November 2023, all dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, the defendants,

**VENKATESH SATTARU,**
**NIKHIL PENMATSA, and**
**SRAVAN PENUMETCHA,**

attempted to and did knowingly obtain the labor and services of another person, an Indian national, identified by initials P.M. whose identify is known to the grand jury, by causing physical harm and by a combination of force, threats of force and by any scheme, plan or pattern intended to cause P.M. to believe that, if P.M. did not perform such labor and services, P.M. or another person would suffer serious harm.

All in violation of Title 18, United States Code, §§§1589, 1594(a), and 1594(b).

**COUNT 2**
**(Trafficking with Respect to Forced Labor)**

The Grand Jury Further Charges:

1. On or about December 16, 2022, said date being approximate, in the Eastern District of Missouri and elsewhere, the defendant,

**VENKATESH SATTARU,**

did knowingly recruit, harbor, transport, or obtain by any means, one or more persons for labor or services in violation of Title 18, United States Code, §1589.

All in violation of Title 18, United States Code, §§§1590, 1594(a), and 1594(b).

**COUNT 3**
**(Conspiracy to Commit Theft of Government Funds)**

The Grand Jury Further Charges:

**A. AT ALL TIMES RELEVANT HEREIN**

**VENKATESH SATTARU** and **NITYA SATTARU** are husband and wife living within the Eastern District of Missouri. **VENKATESH SATTARU** and **NITYA SATTARU** are naturalized citizens of the United States.

**B. THE CONSPIRACY**

**The United States Department of Veterans Affairs ("VA")**

1. The United States Department of Veterans Affairs ("VA") is a government agency that provides patient care and federal benefits to veterans and their dependents. The VA is comprised primarily of three administrations, each performing a range of functions: Veterans

Health Administration ("VHA"), which provides comprehensive health care and related benefits and services for veterans; Veterans Benefits Administration ("VBA"), which is responsible for administering the VA's programs that provide financial and other forms of assistance to Veterans such as compensation, pension, survivors' benefits, rehabilitation and employment assistance, education assistance, home loan guaranties, and life insurance coverage; and National Cemetery Administration ("NCA") which operates 131 national cemeteries in the United States and Puerto Rico, together with oversight and management of 33 soldiers' lots, confederate cemeteries, and monument sites.

2. The VHA operates the nation's largest integrated health care system with more than 1400 sites of care, including hospitals, community clinics, community living centers, domiciliary, readjustment counseling centers and various other facilities. Basic eligibility for health care benefits is any person who served active military, naval or air service and who was discharged or released under conditions other than dishonorable may qualify. Reservist and National Guard Members may also qualify for VA health care benefits if they were called to active duty (other than for training only) by a federal order and completed the full period for which they were called or ordered to active duty.

3. One of the programs administered by the VBA is The Program of Comprehensive Assistance for Family Caregivers ("PCAFC"), also referred to as the Caregiver Support Program ("CSP"). The CSP provides monthly financial compensation to an individual for providing care to qualified veterans/service members. The intent of the program is to compensate caregivers, who are typically family members, for the time they commit to providing care since it can, in some circumstances, limit their ability to obtain employment of their own. Qualified

veteran/service members are those that are unable to care for themselves, who suffer from mental and/or physical disabilities that prevent them from independently accomplishing activities of daily living.

4. While enrolled in the CSP, the VA requires wellness contacts to review the veteran's well-being, adequacy of personal services being provided by the caregiver, and the well-being of the caregiver. This occurs at a minimum of every 120 days, with at least one visit being in-home on an annual basis. In-home visits are conducted by trained medical professionals and are designed to assess the veteran's physical and psychological state.

5. **VENKATESH SATTARU** is a veteran of the United States Army, serving his tour from October 15, 2013, through November 21, 2014.

6. **VENKATESH SATTARU** joined the CSP effective January 21, 2020, and was revoked on April 5, 2024, with an effective revocation date of January 21, 2020. **VENKATESH SATTARU's** wife, **NITYA SATTARU** received monthly compensation from the VA as **VENKATESH SATTARU**'s caregiver.

7. Beginning on or about March 26, 2020 and continuing until on or about July 25, 2023, in the Eastern District of Missouri, the defendants **VENKATESH SATTARU** and **NITYA SATTARU** did knowingly and willfully conspire, confederate, and agree together to commit offenses against the United States in violation of Title 18, United States Code, Section 641, by executing a scheme and artifice to defraud and to obtain money by means of false presentences, representations, and promises, by falsely representing that **VENKATESH SATTARU** was significantly limited in his ability to independently accomplish activities of daily living.

## C. OBJECT OF THE CONSPIRACY

The primary object of the conspiracy was to obtain money to which the defendants **VENKATESH SATTARU** and **NITYA SATTARU** were not entitled.

## D. MANNER AND MEANS OF ACCOMPLISHING THE OBJECT OF THE CONSPIRACY

The defendants, **VENKATESH SATTARU** and **NITYA SATTARU**, devised and intended to devise, a scheme and artifice to obtain money or property and to defraud the United States Department of Veterans Affairs, by obtaining benefits by means of materially false statements and representations, to wit, the defendant **VENKATESH SATTARU** was limited significantly in his ability to function independently and engage in routine daily activities. These false representations included, but were not limited to, **VENKATESH SATTARU**'s ability to ambulate and transfer, travel, socialize outside his home, drive, participate in hobbies, maintain a business, sit long periods of time, lift items, make decisions without immediate supervision, maintain safety of himself and others, comprehend and follow instructions, plan events, and walk on uneven surfaces.

## E. OVERT ACTS

In furtherance of the conspiracy and to effect the object thereof, the defendants, **VENKATESH SATTARU** and **NITYA SATTARU** performed or caused to be performed overt acts in the Eastern District of Missouri, including but not limited to:

1. On or about March 26, 2020, **NITYA SATTARU** falsely represented to the United States Department of Veterans Affairs that due to **VENKATESH SATTARU**'s medical condition he needed assistance: using the restroom, walking, bathing, and putting on clothing.

**NITYA SATTARU** further represented that **VENKATESH SATTARU** was completely unable to: drive, complete housework, cook, shop, or manage his own finances or medication allotment.

2. On or about September 27, 2021, **VENKATESH SATTARU** falsely represented to the United States Department of Veterans Affairs that he was unable to dress himself, used a cane, walker, grab bars, shower chair, sock aid, reacher and a bedside commode.

3. On or about December 20, 2021, **VENKATESH SATTARU** falsely represented to the United States Department of Veterans Affairs that he used grab bars, raised toilet seats, reacher sponge, cane and a shower chair. **NITYA SATTARU** falsely represented that VENKATESH **SATTARU** was unable to engage in physical activity.

4. On or about January 7, 2022, **VENKATESH SATTARU** falsely represented to the United States Department of Veterans Affairs that he was unable to: bathe, prepare meals, use the restroom, or carry items.

5. On or about August 12, 2022, **VENKATESH SATTARU** falsely represented to the United States Department of Veterans Affairs that he required **NITYA SATTARU's** assistance to do "small things such as getting up and sitting down".

6. On or about March 28, 2023, **VENKATESH SATTARU** falsely represented to the United States Department of Veterans Affairs that he had limited physical ability.

7. On or about or about July 25, 2023, **VENKATESH SATTARU** represented to the United States Department of Veterans Affairs that he was unable to utilize stairs and that his physical, mental, and emotional health remained consistent with other visits.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 4-50**
**(Theft of Government Funds)**

The Grand Jury Further Charges:

On or about the dates listed below, in the Eastern District of Missouri, the defendants,

**VENKATESH SATTARU, and**
**NITYA SATTARU,**

did embezzle, steal, purloin, and knowingly convert to use, money of the United States or of any agency thereof, or any property made or being made under contract for the United States or any department or agency thereof, that being, the United States Department of Veterans Affairs benefit payments in the amounts listed below:

| COUNT | DATE | AMOUNT | FEDERAL FUNDS |
|---|---|---|---|
| 4 | Apr-20 | $4,723.24 | Veteran Affairs Benefits |
| 5 | May-20 | $1,405.05 | Veteran Affairs Benefits |
| 6 | Jun-20 | $1,405.05 | Veteran Affairs Benefits |
| 7 | Jul-20 | $1,405.05 | Veteran Affairs Benefits |
| 8 | Aug-20 | $1,405.05 | Veteran Affairs Benefits |
| 9 | Sep-20 | $1,405.05 | Veteran Affairs Benefits |
| 10 | Oct-20 | $1,649.22 | Veteran Affairs Benefits |
| 11 | Nov-20 | $1,649.22 | Veteran Affairs Benefits |
| 12 | Dec-20 | $1,649.22 | Veteran Affairs Benefits |
| 13 | Jan-21 | $1,665.73 | Veteran Affairs Benefits |
| 14 | Feb-21 | $1,665.73 | Veteran Affairs Benefits |
| 15 | Mar-21 | $1,665.73 | Veteran Affairs Benefits |
| 16 | Apr-21 | $1,665.73 | Veteran Affairs Benefits |
| 17 | May-21 | $1,665.73 | Veteran Affairs Benefits |
| 18 | Jun-21 | $1,665.73 | Veteran Affairs Benefits |
| 19 | Jul-21 | $1,665.73 | Veteran Affairs Benefits |
| 20 | Aug-21 | $1,665.73 | Veteran Affairs Benefits |
| 21 | Sep-21 | $1,665.73 | Veteran Affairs Benefits |
| 22 | Oct-21 | $1,665.73 | Veteran Affairs Benefits |
| 23 | Nov-21 | $1,665.73 | Veteran Affairs Benefits |
| 24 | Dec-21 | $1,665.73 | Veteran Affairs Benefits |
| 25 | Jan-22 | $1,712.50 | Veteran Affairs Benefits |

| | | | |
|---|---|---|---|
| 26 | Feb-22 | $1,712.50 | Veteran Affairs Benefits |
| 27 | Mar-22 | $1,712.50 | Veteran Affairs Benefits |
| 28 | Apr-22 | $1,712.50 | Veteran Affairs Benefits |
| 29 | May-22 | $1,712.50 | Veteran Affairs Benefits |
| 30 | Jun-22 | $1,712.50 | Veteran Affairs Benefits |
| 31 | Jul-22 | $1,712.50 | Veteran Affairs Benefits |
| 32 | Aug-22 | $1,712.50 | Veteran Affairs Benefits |
| 33 | Sep-22 | $1,712.50 | Veteran Affairs Benefits |
| 34 | Oct-22 | $1,712.50 | Veteran Affairs Benefits |
| 35 | Nov-22 | $1,712.50 | Veteran Affairs Benefits |
| 36 | Dec-22 | $1,712.50 | Veteran Affairs Benefits |
| 37 | Jan-23 | $1,794.01 | Veteran Affairs Benefits |
| 38 | Feb-23 | $1,794.01 | Veteran Affairs Benefits |
| 39 | Mar-23 | $1,794.01 | Veteran Affairs Benefits |
| 40 | Apr-23 | $1,794.01 | Veteran Affairs Benefits |
| 41 | May-23 | $1,794.01 | Veteran Affairs Benefits |
| 42 | Jun-23 | $1,794.01 | Veteran Affairs Benefits |
| 43 | Jul-23 | $1,794.01 | Veteran Affairs Benefits |
| 44 | Aug-23 | $1,794.01 | Veteran Affairs Benefits |
| 45 | Sep-23 | $1,794.01 | Veteran Affairs Benefits |
| 46 | Oct-23 | $1,794.01 | Veteran Affairs Benefits |
| 47 | Nov-23 | $1,794.01 | Veteran Affairs Benefits |
| 48 | Dec-23 | $1,794.01 | Veteran Affairs Benefits |
| 49 | Jan-24 | $1,886.67 | Veteran Affairs Benefits |
| 50 | Feb-24 | $3,127.27 | Veteran Affairs Benefits |

All in violation of Title 18, United States Code, Section 641 and 2.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Sections 371 and 641 as set forth in Counts 3 through 50, the defendant(s) shall

forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation.

2. Pursuant to Title 18, United States Code, Sections 1594(d), upon conviction of an offense in violation of Title 18, United States Code, Sections 1589 and 1590 as set forth in Counts 1 through 2, the defendant(s) shall forfeit to the United States of America any property, real or personal, involved in, used, or intended to be used to commit or to facilitate the commission of a violation, or property traceable to such property; and any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of such violation, or any property traceable to such property.

3. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said violation.

4. Specific property subject to forfeiture includes, but is not limited to, the following:

a. Real Property at 3901 Hwy D, Defiance, MO 63341;

b. Real Property at 6 Daniel Drive, O'Fallon, MO 63366; and

c. Proceeds from the sale of 324 Chestnut Creek Circle, Dardenne Prairie, MO, 63368 on or about March 20, 2024.

4. If any of the property described above, as a result of any act or omission of the defendant(s):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

________________________
FOREPERSON

SAYLER A. FLEMING
United States Attorney

____________________________________
DIANNA R. COLLINS, 59641MO
Assistant United States Attorney